**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:26-MJ-5285-MAS** |
| | ) | |
| **MAURICE WARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION & ORDER**

After serving twelve and a half years in prison for first degree manslaughter, Defendant Maurice Ward is charged with distribution of cocaine and conspiracy of the same. [DE 1]. At the time, he was on state bond for an assault he committed during his prison term. At the initial appearance, the United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C). The Court conducted a detention hearing on October 28, 2026. For the reasons below, the Court finds that Ward presents a risk of danger no condition or combination of conditions can adequately mitigation and will detain Ward pretrial.

## I. LEGAL STANDARD

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). A detention presumption arises under the BRA as to both nonappearance and danger risk because of the nature of the charges. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some

evidence" that he poses neither a nonappearance nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Through the testimony of Ward's mother, Delana Carter, Ward rebutted the presumption as to danger and nonappearance. She testified to his good character, the full-time job at a fence construction company he could return to if released, and the family support and supervision he would have in her home.

Detention premised on nonappearance requires preponderant evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. §

3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given the hearing's informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.

## II. ANALYSIS

### A. WARD'S DANGER TO THE COMMUNITY

The § 3142(g) factors drive the analysis. Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

### 1. Ward's History and Characteristics

The Court must consider many aspects of Ward's background in making the decision to release or detain him. Specifically, the BRA requires courts to "take into account the available information concerning—" [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Ward is a 36-year-old lifelong resident of Lexington, Kentucky. After his release from state prison and before his arrest in this case, Ward resided with his mother and stepfather in Lexington. [Pretrial Services Report at 1-2]. If released, Ward would return to the same address. Ward has been employed at Commonwealth Fence Company for 5 months and could return to that job if released. [Pretrial Services Report at 2]. Ward's mother, stepfather, and siblings live in Lexington. Ward has no history of mental health issues; he is physically healthy except for blindness in one eye. [Pretrial Services Report at 4]. Ward reported being a regular consumer of alcohol and cannabinoids. [Pretrial Services Report at 4].

Ward's criminal history consisted of misdemeanors until 2012, when, at the age of 22, he was charged with (and eventually convicted of) manslaughter in the first degree resulting from a shooting that also involved Delvagio Lax. [Pretrial Services Report at 4]. Ward was sentenced to 15 years, of which he served twelve and a half before being placed on mandatory reentry supervision upon his release in July 2025.

[Pretrial Services Report at 4]. While serving his prison sentence, Ward was allegedly involved in a prison assault of another prisoner. Ward argues he was breaking up the fight; however, he was indicted for this assault in Lee County. [Pretrial Services Report at 4]. Ward was on bond for the assault charge when he committed the offenses alleged in this case. Weighing in Ward's favor, he has no failures to appear in his criminal history.

**2. <u>The Nature and Circumstances of the Offense Charged</u>**

The BRA requires Courts to consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]" 18 U.S.C. § 3142(g)(1).

The Affidavit accompanying the Complaint in this case and the testimony of DEA Special Agent Jason Moore at the detention hearing described the facts and circumstances leading to the charges in the Complaint. During the month of September 2026, the DEA began an investigation into Delvegio Lax for trafficking in kilogram quantities of cocaine. [DE 1]. The DEA utilized a confidential source (CS) to arrange controlled purchases of cocaine from Lax. When the CS arrived to conduct the purchase, he was met by Lax and Ward. Law enforcement conducted surveillance on the purchase, watching Ward hand the CS a brick-shaped item. There was some tense negotiation about the amount of cocaine to be purchased. Ultimately, the CS handed the brick back but purchased one ounce of cocaine from Lax. During the negotiations, however, Lax briefly walked away and Ward displayed a handgun that he had on his person. [DE 8, Recording at 14:20]. Ward told the CS that he needs to stay "strapped." [DE 8, Recording at 14:25]. A couple of weeks later, law enforcement

observed the CS meet with Ward in a vehicle. Ward provided the CS with what Ward purported to be a kilogram of cocaine in exchange for $16,500. The purported cocaine turned out to not to contain any narcotics. [DE 8, Recording at 18:15-20:00].

Ward responded to the allegations that the amount of drugs that were actually trafficked was only one ounce, a relatively small amount (accounting for, presumably, the fake drugs he also trafficked in). He also argued that while the CS stated he saw Ward in possession of a firearm, there was no indication that Ward brandished or used the weapon to threaten anyone.

Although the Court has found that Ward rebutted the presumption that attaches to these types of allegations, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).

Congress has assigned a special category of presumed detention to these types of crimes, reflecting the seriousness of the danger they pose to the community. Moore testified to the danger that the combination of felons in possession of kilogram quantities of cocaine, firearms, and engaging in fake narcotics transactions pose to the community. This factor weighs in favor of detention.

**3. <u>The Weight of the Evidence of Dangerousness</u>**

In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(g). "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness,

rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948). This BRA factor is somewhat duplicative of § 3142(g)(1) and (3) because in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent behavior.

Ward's criminal history includes manslaughter utilizing a firearm. He is a prohibited person and is accused of possessing a firearm during the narcotics transactions with the confidential source in this case. The dangerousness of the combination of drugs and guns cannot be overstated. *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community). In addition, Moore testified to the particular dangers that are presented when narcotics traffickers fleece their buyers by selling fake drugs, as allegedly occurred here, which is often remedied by violence. Finally, Ward was on bond for a violent prison assault at the time of the charges in this case, raising the specter of even more violence and noncompliance on the part of Ward.

### 4. <u>The Nature and Seriousness of Danger Posed by Release</u>

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

Ward suggested conditions that could mitigate the risk of danger to the community, such as GPS location monitoring, home detention or home incarceration,

no access to the Internet, no contact with co-defendants and witnesses, travel restrictions and surrender of passport, and a prohibition on possession of firearms.

The proposed conditions are not sufficient because Ward allegedly committed the instant offenses while residing with his mother at the proposed address, while on state bond, subject to conditions. Ward's conduct, as viewed by law enforcement surveillance, is a brazen violation of those conditions and gives the Court no assurance that he would comply with any conditions of release that this Court could impose.

In drafting the BRA, Congress determined that "drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989). Specifically, "the risk of continued narcotics trafficking on bail constitutes a risk to the community." *Id.*

Ward was on state bond for an assault charge at the time he committed the crimes alleged in the Complaint. The Court is particularly concerned that this conduct is connected to Delvagio Lax, who was also connected to the homicide Ward was convicted of in 2014. Both Lax and Ward are convicted felons. Further, Ward allegedly made a point to let the confidential source know that he was "strapped" and that he had to "stay strapped," meaning that he had to be armed at all times. This is common practice for someone engaged in narcotics trafficking. Of course, Ward is a felon who is prohibited from possessing a firearm at any time, regardless. Finally, the Court gives weight to Moore's testimony that while selling real narcotics in the community presents one type of danger—the possibility of a drug overdose—selling

fake narcotics in the community, as Ward and Lax allegedly did here, presents the risk of retribution by violence in the community.

"[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[,]" which seems likely here. *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004). Thus, the Court finds the United States has proven by a preponderance of the evidence that Ward poses a risk of danger that cannot be mitigated by conditions.

### B. Nonappearance Risk

The United States argued that Ward was a fugitive after a warrant was issued for his arrest on the state assault charge, and that he has difficulty conforming his behavior to conditions imposed on him. The Court finds these arguments wanting as to Ward's nonappearance risk. Ward presented evidence of his life-long connections to Lexington. His family all live in this area. His mother, stepfather, and siblings provide support for him. He has a home and a job he can return to. Based on all of these facts, the Court finds the United States did not carry its burden to prove by a preponderance of the evidence that Ward poses a risk of not appearing for future court dates.

## III. CONCLUSION

For the above-stated reasons, the Court finds the United States failed to prove by a preponderance of the evidence that Ward poses a risk of nonappearance but proved by clear and convincing evidence that Ward is an irremediable danger to the community and the Bail Reform Act mandates detention.

The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Ward will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Ward.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the November 10, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY